UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>    v. )<br>)<br>WAGNER SOZI, )<br>)<br>    Defendant. )<br>) | Docket No. 1:20-cr-10137-GAO |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America submits this sentencing memorandum for the limited purpose of addressing its objection to the calculation of total loss that appears in the Presentence Report ("PSR"). Specifically, the United States objects to the calculation of loss in ¶ 33 of the PSR. Here, U.S. Probation ("USPO") has based its calculation on a narrow interpretation of "intended loss" that is at odds with caselaw in excluding consideration of those losses that the Defendant intended but did not in fact achieve. In fact, "intended loss" should be calculated to include those losses that the Defendant intended and that did occur (*i.e.,* where the Defendant successfully obtained the proceeds he sought) as well as those losses that the Defendant intended but that did not occur (*i.e.,* where the Defendant failed to obtain the proceeds he sought).

In this case, the parties and USPO agree that the Defendant's actual loss is $110,221.[1] The parties and USPO also agree that the Defendant intended to obtain an additional $92,978 but failed to do so. USPO calculates the total loss amount as $110,221, altogether disregarding the additional intended loss of $92,978. The United States submits that the total loss should be $203,199 – the sum of the actual loss and the loss that was intended but not achieved.

---

[1] Amounts in this memorandum have been rounded to the nearest dollar.

**Background**

On May 13, 2021, the Defendant pled guilty to an indictment charging Wire Fraud, in violation of 18 U.S.C. § 1343; Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A; and False Claim, in violation of 18 U.S.C. § 287. *See* PSR at ¶ 2. The Defendant engaged in a scheme to defraud that involved his unlawful use of the names, dates of birth, Social Security numbers, and other personal identifying information of numerous individuals, including to rent cars, to make purchases, and to open Staples store credit accounts. The Defendant also submitted two fraudulent claims for Pandemic Unemployment Assistance ("PUA") benefits – one under his own name, and another under the name of an unwitting victim.

The pertinent losses in this case are as follows:

- Sozi's fraudulent PUA claim under his own name – for which he received **$8,850** in benefit payments (PSR ¶ 13);

- Sozi's fraudulent PUA claim under a victim identity. This claim would have resulted in the payment of **$28,320** in benefits, but was denied (PSR ¶ 11);

- Sozi's use of victim identities to open Staples store credit accounts and to use these accounts to purchase Visa gift cards worth **$81,865** (PSR ¶ 22);

- Sozi's use of a victim identity to withdraw **$5,000** cash (PSR ¶ 14);

- Sozi's use of a victim identity to purchase a Rolex for **$15,459.28** (*Id.*);

- Sozi's use of a victim identity to attempt to make a purchase of **$5,560** at Saks, which was denied (*Id.*);

- Sozi's rental of a Dodge Charger under a victim identity, and his failure to return this vehicle, which was worth **$35,498**[2] (PSR ¶ 15); and

---

[2] The loss for stolen property is to be calculated using the full value of the stolen item, regardless of whether the item was eventually returned to the owner or in what condition the item was returned. *See United States v. Carrillo-Figueroa*, 34 F.3d 33, 43 (1st Cir. 1994) ("[o]rdinarily, when property is taken, the amount of the loss is calculated by using the fair market value of the particular property at issue…the amount of loss in the case of a vehicle is calculated using the market value of the vehicle even if the vehicle is recovered immediately).”

- Sozi's rental of a Ford Mustang under a victim identity, and his failure to return this vehicle, which was worth **$23,600** (PSR ¶ 16).

In total, the Defendant succeeded in defrauding his victims out of $110,221 (his own PUA claim, the Visa gift cards, the Rolex, and the cash withdrawals) and sought to defraud his victims out of an additional $92,978 (the denied PUA claim, the denied Saks purchase, the stolen Charger, and the stolen Mustang).

## Argument

I. Calculation of Loss

The calculation of loss in this case is simple – the Court should add the amount of actual loss ($110,221) to the additional amount of loss that was intended but not achieved ($92,978).

The very question at issue here was addressed by the Second Circuit Court of Appeals, which found that the total loss should include both the actual loss achieved and the intended loss not achieved. *See United States v. Carboni*, 204 F.3d 39, 47 (2nd Cir. 2000) ("Logically, intended loss must include both the amount the victim actually lost and any additional amount that the perpetrator intended the victim to lose").[3] The issue in *Carboni* is analogous to that in the current case – a defendant's fraud caused some actual loss, and on top of this there was an additional amount that the defendant intended a victim to lose, but that the victim did not end up losing. *Id*. The Court of Appeals held that the district court was correct in calculating total loss by adding the "actual loss" to "the amount the bank would have lost" had the defendant's scheme succeeded. *Id. See also United States v. Sesay*, 937 F.3d 1146, 1153 (8th Cir. 2019) ("Intended loss… includes actual losses suffered").

---

[3] The Court in *Carboni* examined the prior fraud guidelines at USSG § 2F1.1, but the same logic extends to the current fraud guidelines at USSG § 2B1.1.

The logic for this approach is clear: the U.S. Sentencing Guidelines ("USSG") calculation should take into account the entire amount of loss that the Defendant intended to inflict, not just a portion of that loss. Indeed, to do otherwise would result in perverse results. Take the hypothetical example of Fraudster # 1, who intended a loss of $100,000 but obtained nothing, and Fraudster #2, who intended a loss of $100,000 and successfully obtained $90,000, but failed to obtain the remaining $10,000. Under USPO's suggested interpretation of the Guidelines, the loss enhancement for Fraudster #1 would be 8 (loss of $95,000+), whereas the loss enhancement for Fraudster #2 would be 6 (loss of $40,000+). In other words, the offender who sought to steal $100,000 but obtained nothing would be treated more severely than the offender who sought to steal the same amount and was mostly successful. Such an outcome defies logic.

Simply put, the Defendant in this case intended to cause losses of $203,199, and so this amount is his intended loss under the Guidelines. There is no logical or textual support for considering only the portion of this intended loss that the Defendant successfully stole and ignoring the significant amount of loss ($92,978) that he failed to steal despite his efforts and intention to do so. Indeed, the very idea that lies at the core of the concept of "intended loss" within the USSG is that a defendant should be punished both for any loss that he successfully inflicts as well as for any loss that he tries unsuccessfully to inflict.

Rudimentary guidance issued by the U.S. Sentencing Commission is consistent with the United States' proposed approach for loss calculation.  *See* Primer on Loss Calculation under § 2B1.1, pages 5-6 ("actual losses, or losses actually completed… are to be included in any calculation of intended loss.  ***That is, the categories are not mutually exclusive and may be combined to calculate an overall intended loss***") (emphasis added).[4]  This common-sense guidance is in keeping with the essential principal that "[a]ll reasonably foreseeable losses that flow directly, or indirectly, from a defendant's conduct should be included in the loss calculation."  *Id.*, page 3.

II.    Reason for Distinction Between Actual and Intended Loss

The United States agrees with USPO that there is a distinction between actual loss and intended loss under the USSG – but such distinction can and should be achieved in a common-sense manner that is consistent with the United States' proposed loss calculation.

The reason for the distinction between actual loss and intended loss is to prevent double-counting.  *See United States v. Mickens*, 453 F.3d 668, 672-673 (6th Cir. 2006) ("What the guidelines prohibit is not a calculation of intended loss that accounts for all actual losses already incurred; they prohibit a calculation that without explanation double counts the actual loss resulting from one instrument of the fraud and the potential intended loss from the same instrument of the fraud").  For example, it would be improper to consider the Defendant's attempted purchase of a Rolex for $15,459 as intended loss, and then also to consider his successful purchase of this watch as actual loss, and then to add together an intended loss of

---

[4] This 2021 primer was prepared by the Office of the General Counsel for the U.S. Sentencing Commission, and was last accessed on October 21, 2021 at www.ussc.gov/sites/default/files/pdf/training/primers/2021_Primer_Loss.pdf.

$15,459 and an actual loss of $15,459 to arrive at a total loss exceeding $30,000. Or, to use the above hypothetical example, it would be improper to add Fraudster #2's intended loss ($100,000) to his actual loss ($90,000) to arrive at a total loss of $190,000. It is simply to avoid double-counting that the USSG mandate the use of the greater of the actual versus intended loss. In this case, singular consideration of the losses associated with the denied PUA claim, the denied Saks purchase, the stolen Charger, and the stolen Mustang, would not implicate any double-counting. The Court should include these losses – amounting to $92,978 of intended loss that would otherwise be ignored – in its calculation of total loss.

## Conclusion

For the foregoing reasons, the United States' objection to the loss calculation should be sustained, and ¶ 33 of the PSR should be amended to reflect a total loss amount of $203,199 and a loss enhancement of 10. Subsequent portions of the PSR calculating the offense level and guideline sentencing range should also be modified accordingly.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: /s/ *William F. Abely*
WILLIAM F. ABELY
Assistant U.S. Attorney
U.S. Attorney's Office
William.Abely@usdoj.gov

Date: October 21, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document will be filed via ECF and thereby served on all counsel of record.

/s/   *William F. Abely*
William F. Abely
Assistant United States Attorney

Date:  October 21, 2021