UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | CASE NO.: 1:20-CR-10137-GAO |
| | : | |
| WAGNER SOZI | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Wagner Sozi, by and through counsel, submits this memorandum to aid the Court with imposing a sentence that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553 (a). For the reasons below, Mr. Sozi requests a sentence of time served with probation.

## I.    BACKGROUND

The government filed a criminal complaint against Mr. Sozi on June 23, 2020, alleging Wire Fraud, in violation of 18 U.S.C. § 1343.[1] He was arrested on June 25, 2020,[2] and initially appeared before the Court later that afternoon.[3] At the government's request, the Court ordered him held without bail pending the outcome of a detention hearing,[4] which occurred on June 26, 2020, and June 30, 2020,[5] respectively. After the two-part hearing, on July 1, 2020, the Court ordered Mr. Sozi released with conditions that included his participation in an in-patient substance abuse treatment program.[6] Before his release, Mr. Sozi also waived his right to a preliminary hearing.[7]

Mr. Sozi was involuntarily removed from the treatment program arranged for him by U.S. Probation. Once removed, he failed to notify his supervised Pretrial Services Officer.

---

[1] Docket Entry #1.
[2] Docket Entry #9.
[3] PSR, ¶.1 and Docket Entry #9.
[4] Docket Entry #9.
[5] Docket Entry #10 and 15.
[6] *Id.*
[7] Docket Entry #16.

Though he had every intention of enrolling in another program after resolving problems with his insurance (as recommended by his former lawyer), Mr. Sozi returned home and to work at his business, all while Pretrial Services believed he was in treatment.

On July 21, 2020, a grand jury returned an indictment against Mr. Sozi alleging with Counts (1) and (2), Wire Fraud in violation of 18 U.S.C. § 1343; Count (3), Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A; and Count (4) False or Fictitious Claim, in violation of 18 U.S.C. § 287.[8]  Mr. Sozi was rearrested following the return of the indictment.   Authorities picked him up on August 21, 2020 and brought him before the Court that same day where his bail was revoked.[9]  Mr. Sozi then re-appeared for arraignment on August 27, 2020 at which time the Court declared him to a violator of his supervised release conditions and ordered that he remain held without bail.[10]

On May 13, 2021, Mr. Sozi pled guilty to the four-count Indictment absent any written plea agreement with the government.[11]  The Court accepted his pleas and adjudged him guilty. Mr. Sozi is scheduled to appear for sentencing on December 8, 2021.  U.S. Probation issued its final (and revised) presentence report (PSR) on November 19, 2021.   The PSR calculates Mr. Sozi' criminal history category at I[12] and a total offense level of 16,[13] which results in an advisory sentencing guidelines range of 21 to 27 months.[14]  The Defense has no objections to the final PSR.

---

[8] PSR, ¶.22.
[9] PSR, ¶.1.
[10] Docket Entry #30.
[11] PSR, ¶.2.
[12] PSR, ¶.47 and 90.
[13] PSR, ¶.42 and 90.
[14] PSR, ¶.90.

## II.    SENTENCING FACTORS AND CONSIDERATIONS

The District Court is required to fashion a sentence that is "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment set forth in 18 U.S.C. § 3553 (a). *United States v. Booker*, 543 U.S. 220 (2005).   Sentencing should begin with a calculation of the applicable sentencing guidelines range.  *Gall v. United States*, 128 S. Ct. 586, 596 (2007) (*citing Rita v. United States*, 127 S. Ct. 2456, 2480 (2007)).  The guidelines calculation is a starting point and initial benchmark for the Court to consider, however, it is not the only sentencing consideration.  *Id.*

A Court may not presume the guidelines range is reasonable but must make an individualized assessment of each defendant based upon the facts presented in each case.  *Gall,* 128 S. Ct. at 597 (emphasis added).   After both parties are afforded an opportunity to argue for whatever sentence they deem appropriate, the Court must then consider the factors[15] of 18 U.S.C. § 3553 (a) to determine the most appropriate sentence for the instant case.  *Id.*  In the instant case, Mr. Amaral asks the Court to consider a number of important facts when evaluating his sentencing recommendation.

---

[15] To determine an appropriate sentence that is sufficient, but not greater than necessary, the Court shall consider the following:
- (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
- (2) the need for the sentence imposed:
  - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  - (B) to afford adequate deterrence to criminal conduct;
  - (C) to protect the public from further crimes of the defendant; and
  - (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
- (3) the kinds of sentences available;
- (4) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;
- (5) any pertinent policy statement issued by the Sentencing Commission;
- (6) the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct; and
- (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553 (a).

**(1) Motives for the Offense Conduct**

Mr. Sozi makes no effort whatsoever to marginalize the seriousness of his admitted misconduct.  However, he asks the Court to consider the background and circumstances that led to his actions.  Mr. Sozi was laboring under the influence of drug addiction.   This contributed to his poor decision-making at the time.  He also needed money to fuel his habit, and especially to avoid the horrors of withdrawal from opiates.   Prior to his involvement in the instant misconduct, Mr. Sozi had owned and operated a successful autobody repair shop, E&T Auto Body.[16]  The shop burned down, and insurance did not pay the claim.  This left Mr. Sozi financially destitute, at least for a period of time, so when the opportunity came along to both learn and commit fraud, he seized upon it.[17]

**(2) Acceptance of Responsibility**

Mr. Sozi has accepted full responsibility for his actions.   This includes waiving his right to a preliminary hearing following his initial arrest, and pleading guilty without the benefit of a plea agreement.   Lastly, he has done everything within his power to mitigate his wrongdoing since being incarcerated.   He asks the Court to take this all into consideration when adjudging his sentence.

**(3) History and Characteristics of Mr. Sozi**

Mr. Sozi is age 33 was born in Brazil.[18] Mr. Sozi was primarily raised by his paternal grandmother in Brazil until age 12.  He did not have a strong relationship with his parents.  His mother worked a lot locally, and his father traveled a lot due to his employment.[19]   Mr. Sozi's father was also physically and verbally abusive towards him.[20]  At age 12, he came to the United

---

[16] PSR, ¶.82.
[17] *Id.*
[18] PSR, ¶.60.
[19] *Id.*
[20] *Id.*

4

States with his mother.  His father was already living in Massachusetts.   Once here, he moved

around a lot, often changed schools, and had difficulty making friends.  He never finished high

school and even spent some time in foster care due to the unstable life afforded by his parents.[21]

As such, his childhood and adolescence were particularly challenging for him.

Mr. Sozi's parents are still married, but no longer live in the United States.  His father,

with whom he has not spoken in a long while, resides in France,[22] and his mother returned to

Brazil.[23]  Mr. Sozi has a paternal half-sibling, age 6, who lives in Brazil with his mother. He also

has a biological brother, age 12, born to his parents and lives in Brazil.[24] Needless to stay, Mr.

Sozi does not have much family in the United States and is pending removal proceedings himself

from this country by Immigration officials.  However, he is disputing the removal action, applied

for asylum, and has been given a non-removal letter while his case makes its way through the

Immigration court system.[25]

Mr. Sozi has one son, Henry Sozi, who is age 12.  Henry is the product of Mr. Sozi's

former romance with Suemilia Silva, age 38.   The relationship of 11 years ended poorly.  The

two became parents at an early age and neither has the requisite maturity, experience, or

resources in life to foster a healthy relationship.  Times have changed and healed old wounds,

such that Mr. Sozi and Ms. Silva have a good relationship now for the purpose of coparenting

Henry.[26]

In 2018, Mr. Sozi married his best friend's sister, Siera Shelzi.[27]  Because of Mr. Sozi's

relationship with Siera brother' (Brandon Shelzi), the two have known each other since

---

[21] PSR, ¶.61.
[22] PSR, ¶.63.
[23] PSR, ¶.64.
[24] PSR, ¶.62.
[25] *Id.*
[26] PSR, ¶.69.
[27] PSR, ¶.70.

childhood when Mr. Sozi came to the United States.[28] Brandon Shelzi died on November 5,

2015, due to drug overdose.  This had a profound impact of Mr. Sozi psychological, as Brandon

was like a brother to him.  He continued to remain close with the Shelzi family, even after

Brandon's death and eventually married Siera.  She is obviously aware of Mr. Sozi's current

legal circumstances and remains supportive of him during this difficult time.

### (4) Employment and Business Experience

Mr. Sozi and his wife now own South Medford Auto Body Shop where Mr. Sozi was

working at the time of his arrest.[29] Ms. Shelzi is the president, treasurer, secretary, and director.[30]

After their former business was destroyed by fire and insurance failed to pay the claim,[31] Siera

was able to secure the necessary financing to start this new business.  Prior to his arrest, Mr. Sozi

was the lifeblood South Medford Auto Body Shop.  He was able to bring in a significant number

of auto body repair jobs each month.  He was also resourceful in his ability to find and maintain

quality employees to work in the shop, who complimented his efforts.   Since Mr. Sozi's arrest,

Ms. Shelzi struggles each month to keep this business open and operating.  Employees quit.

Those who remained on board challenged her knowledge and authority.  Insurance

representatives have sought to take advance of her young age and inexperience, and overall,

many customers who followed Mr. Sozi have found other providers.  Notwithstanding this

adversity, Ms. Shelzi continues to survive each month, hoping to keep the business alive until

Mr. Sozi can return to resuscitate it.

---

[28] *Id.*
[29] PSR, ¶.81.
[30] *Id.*
[31] The PSR notes in footnote 3 that this fire was ruled an arson.   Neither Mr. Sozi nor Ms. Shelzi were charged with any crimes arising from this fire, and are represented by a lawyer who is pursuing civil claims against the former body shop's insurance carrier for its failure to pay the claim.

6

As stated above, before South Medford Auto Body, Mr. Sozi owned E&T Auto Body, Inc. for two years before the fire.[32] Mr. Sozi did not collect unemployment benefits or receive any financial insurance benefits from the fire.  E&T grossed approximately 1.3 million a year while in operation.[33] Mr. Sozi started that business after acquiring autobody experience with City Line Auto Body from 2011 to 2013 and Pro Collision Center from 2013 to 2014.[34]   He saved up enough money to open his own shop, build that company up successfully, and lost everything in the blink of an eye when the fire destroyed the shop and the insurance failed to pay the claim.

Siera is holding on to the South Medford Auto Body shop, as best as she can.[35]   If Mr. Sozi is released from incarceration before the business completely fails, he is confident he can rebuild it back, and make it equally, if not more successful than E&T.  He is counting on this as his way to not only support his family, but to comply with the anticipated financial restitution order of his Court once he is sentenced.  The mere existence of this shop provides Mr. Sozi with both hope and an immediate employment opportunity upon his release.  Once this shop was up and running, Mr. Sozi's involvement with the charged and admitted misconduct had come to an end.   He was no longer focused on outward fraud as a means for money but had turned his attention inward by starting and growing a second body shop.  He fully intends to join his wife and rebuilding this business together upon his release.

### (5) Substance Abuse History

Mr. Sozi has a longstanding history of substance abuse.[36]  Historically, he first consumed alcohol at age 7 or 8.  He started with marijuana at age 12 and smoked it regularly until age 28. At age 19, Mr. Sozi tried cocaine.  In 2011, Mr. Sozi broke his right leg in Brazil and was

---

[32] PSR, ¶.82.
[33] *Id.*
[34] *Id.*
[35] While being run solely by Ms. Siera, the company maintains a 5-star rating with Google.
[36] PSR, ¶.76.

prescribed Percocet by a doctor for pain relief in 2013.   This is how his opiate addition formed.
At the time of his arrest, Mr. Sozi was using approximately one gram of Percocet daily.[37] Mr.
Sozi also used fentanyl as well because he purchased pills containing fentanyl believing they
were Percocet.[38]   He did not purposely use this drug.

  Upon his initial release in July 2020, Mr. Sozi entered a treatment program, but was
involuntarily removed.   He then joined the Twelve Step Program of New England where he
participated in out-patient treatment and drug testing.   Since his incarceration, Mr. Sozi joined a
Suboxone program and participates in substance use education classes.[39] Mr. Sozi wants to stay
involved with treatment and hopes to be a sponsor to others upon his release.   He is presently
not experiencing any cravings and has been clean and sober for approximately 15 months.   He
asks the Court to credit his accomplishments in this regard, and acknowledge that his use and
abuse of drugs, at least in part, contributed to his poor decisions to involve himself with fraud.

  **(5) Incarcerated During COVID-19**

  Mr. Sozi has remained incarcerated since August 20, 2020.   The past 15 months of
incarceration for him have been during the COVID-19 pandemic.   Life behind bars during this
period was particularly arduous.   Beginning in March 2020, the facility where Mr. Sozi is
housed, Norfolk County Community Correctional Center, cancelled all detainee programming
related to religion, education, and mental health.   At times, all inmates were locked in for
considerable period of time with no access to phones, showers, and more.

  For periods, the facility did not serve or offer hot meals.   Legal calls, receipt of mail, and
property requests have also been inconsistent.   Family visits were also discontinued.   Needless to
say, these conditions fell considerably short of the minimum standards that a confinement facility

---

[37] PSR, ¶.76.
[38] *Id.*
[39] PSR, ¶.78.

should adhere to when charged with the health, welfare, and safety of inmates.  Mr. Sozi asks the

Court to consider these particularly hard times when fashioning his sentence.[40]

### (6) Collateral Immigration Consequences of Conviction

As stated above, Mr. Sozi is not a U.S. citizen.  He is a Brazilian citizen who is pending

both removal and asylum proceedings.  Because of the aggravated felonies to which he pleaded

guilty, he is subject to deportation – a collateral consequence not incurred by citizen-offenders –

upon completing his jail sentence.  *See Jordan v. De George*, 341 U.S. 223, 232 (1951) (Jackson,

J.) (deportation is "a life sentence of banishment in addition to the punishment which a citizen

would suffer from the identical acts.").  *See United States v. Szanto*, 2007 WL 3374399 (N.D. Ill.

Nov. 8, 2007) (district court granted downward department variance based on, among other

things, defendant's agreement to be deported).

Non-citizen offenders are rarely, if ever, eligible for early release, supervised release, or

similar programs.  *See e.g., United States v. Navarro-Diaz*, 420 F.3d 581 (6th Cir. 2005) (district

court noted defendant would be punished more than a citizen due to ineligibility for six-month

half way house at end of term); *United States v. Pacheco-Soto*, 386 F. Supp. 2d 1198 (D.N.M.

2005) (deportable alien convicted of drug crime sentenced to 60 months, rather than minimum

guideline term of 74 months, in light of his ineligibility for early release, minimum security

prison, or credits for participation in residential drug or alcohol abuse program).  Further,

persons subject to deportation upon completion of a sentence typically spend additional time in

---

[40] In the matter of *United States v. Esperitusanto*, Case No. 19-CR-10136-ADB, on January 29, 2021, the Honorable Allison D. Burroughs in the District of Massachuetts sentenced a Defendant, who had spent 23 months in pretrial custody at the Wyatt, to 33 months of incarceration where the applicable advisory guidelines range was 46 to 57 months.   The Court imposed the 13-point variance, or 28% discount from the bottom end of the range because the Defendant both contracted COVID-19 and spent time incarcerated during the pandemic, under arduous and extraordinarily restrictive conditions.

immigration custody while awaiting deportation.  Mr. Sozi asks this Court to this into consideration when fashioning his sentence.

### (7) Time Served

As of the date of sentencing, Mr. Sozi will have served approximately 16 months in pretrial custody.  He was initially arrested on June 25, 2020 and placed on pretrial release on July 1, 2020, for an initial pretrial confinement term of seven (7) days. He was then rearrested on August 21, 2020 and has remained held continuously up to the present time.  As his sentencing hearing on December 8, 2021, this will be a term of 475 days or 15 months and 18 days.[41]

While in custody, Mr. Sozi has had no disciplinary problems.  As mentioned above, he has participated in substance abuse treatment.  He also acquired a custodial certification, after successfully completing a 5-week program.  This enabled him to acquire a job at the correctional facility.  Mr. Sozi also completed programs in Anger Management, Health Relationships, Substance Use, Hazmat First Responders, and Bloodborne Pathogens.  He has sought to use his time in prison constructively but gaining sobriety, taking courses, and maintaining a job.[42]   He asks the Court to factor this all in when determining his sentence.

### III.   MISCELLANEOUS REQUESTS

If this Court decides to impose a term of incarceration beyond time served, Mr. Sozi asks the Court to recommend to the BOP that he be allowed to serve his jail sentence in a facility as close to Massachusetts as possible, to afford him the opportunity to receive visitation from his family members.  He also asks the Court to recommend to the BOP that he be allowed to participate in the Residential Drug Abuse Program (RDAP), should he have enough time remaining on his sentence and he otherwise qualifies for participation.

---

[41]https://www.timeanddate.com/date/durationresult.html?m1=08&d1=21&y1=2020&m2=12&d2=08&y2=2021&ti=on
[42] PSR, ¶.75.

## IV. <u>ATTACHMENTS</u>

A. Immigration Documents;

B. Letter from Twelve Steps Education Program;

C. Certificates;

D. Statements of Support; and

E. Photos.

## V. <u>CONCLUSION</u>

Based upon the foregoing, Mr. Sozi respectfully asks the Court to impose a sentence of time served followed by a period of supervised release, which he contends is "sufficient, but not greater than necessary" to achieve the objectives of 18 U.S.C. § 3553 (a).

Respectfully submitted this 6th day of December 2021.

Respectfully submitted,
Defendant,
Wagner Sozi
By his Counsel,


/s/ John L. Calcagni III, Esq.
John L. Calcagni III (BBO# 657433)
Law Office of John L. Calcagni III, Inc.
72 Clifford Street, Suite 300
Providence, RI 02903
Phone: (401) 351.5100
Fax: (401) 351.5101
Email:  jc@calcagnilaw.com

11

**CERTIFICATION**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 6, 2021.

/s/ John L. Calcagni III, Esq.
John L. Calcagni III (BBO# 657433)
Law Office of John L. Calcagni III, Inc.
72 Clifford Street, Suite 300
Providence, RI 02903
Phone: (401) 351.5100
Fax: (401) 351.5101
Email: jc@calcagnilaw.com